# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ABBASS OLANREWAJU　　　　　)
MUHAMMED,　　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　Plaintiff, pro se,　　　　)
　　v.　　　　　　　　　　　　)　　1:04CV593
　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　)
F.B.I.,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　)


ABBASS OLANREWAJU　　　　　)
MUHAMMED,　　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　Plaintiff, pro se,　　　　)
　　v.　　　　　　　　　　　　)　　1:04CV562
　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
DOUGLAS RENTZ,　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　)

## RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on a motion to dismiss or, alternatively, for summary judgment (docket no. 12) by Defendant United States on Plaintiff's motion for return of property pursuant to FED. R. CRIM. P. 41(g). Also pending before the court is an action by Plaintiff against FBI agent Douglas Rentz under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in case number 1:04CV562. In Plaintiff's *Bivens* action, Defendant Rentz has filed a motion to dismiss or, alternatively, for summary judgment, and that motion has also been

referred to the undersigned (docket no. 12, case no. 1:04CV562). Because Plaintiff's factual allegations in both cases are overlapping, the court will consolidate them pursuant to FED. R. CIV. P. 42(a).[1] The parties have filed responsive pleadings and this matter is ripe for disposition. The parties have not consented to the jurisdiction of a magistrate judge, and the court must deal with the motions by way of a recommendation. For the reasons discussed herein, it will be recommended that the court grant the motion for summary judgment by Defendant Rentz in Plaintiff's *Bivens* action. It will be further recommended that the court grant in part Plaintiff's motion for return of property.

## BACKGROUND

Plaintiff Abbass Olanrewaju Muhammed, a citizen of Nigeria illegally in the United States, was arrested in February 2003 after an investigation into false passport applications he had submitted. A few days later, an unknown person or persons broke into Plaintiff's apartment and stole some of his belongings. Plaintiff's sister subsequently had the rest of Plaintiff's belongings moved to a storage unit

---

[1]    Rule 42(a) of the Federal Rules of Civil Procedure provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FED. R. CIV. P. 42(a).

-2-

owned by Plaintiff's friend Ayodeji Hammed Ayinde.[2]   In March 2003, search

warrants were executed on the storage unit owned by Ayinde and on four pieces of

Plaintiff's luggage found in the storage unit.  The searches uncovered numerous

items of identity theft, including check books, drivers licenses, social security cards,

credit cards, bank statements, stolen mail, and handwritten notebooks with hundreds

of names, account numbers, social security numbers, and dates of birth.  Plaintiff

subsequently pled guilty in this court to credit card fraud, 18 U.S.C. § 1029(a)(3),

making a false statement on a passport application, 18 U.S.C. § 1542, and related

offenses, and he received a sentence of forty-four months imprisonment.[3]  Judgment

was entered on October 20, 2003.  Plaintiff appealed his sentence, and his sentence

was affirmed by this circuit's court of appeals in an unpublished opinion on

September 3, 2004.  *See United States v. Muhammed*, No. 03-4818, 2004 WL

1949321 (4th Cir. Sept. 3, 2004) (unpublished).

On June 22, 2004, Plaintiff, proceeding pro se, brought a *Bivens* action in this

court against FBI agent Douglas Rentz, alleging that Defendant Rentz violated his

"Constitutional Rights to be free from unreasonable intrusion into plaintiff's private

property and unwarranted search and seizure."  Plaintiff alleges that on February 27,

---

[2]  These facts are taken in part from the unpublished opinion by this circuit's court of appeals affirming Plaintiff's sentence.  *See United States v. Muhammed*, No. 03-4818, 2004 WL 1949321 (4th Cir. Sept. 3, 2004) (unpublished).

[3]  The government introduced evidence that through identity theft and credit card fraud, Plaintiff caused an actual loss of $44,688.62, with a total intended loss of $220,720.

-3-

2003, Defendant Rentz and other agents broke into Plaintiff's apartment and mail box and stole the following property belonging to Plaintiff: one 53" Sony big screen television; one Compaq 15" laptop computer; one Sava 900 Sony home theater surround sound system; one Sony wooden sound system; one Panasonic television/VCR combo; one bedroom radio and CD player; one antique oriental side table; two Nigerian passports, one in Plaintiff's name and one in the name of Terry Olatoye; and one $2,500 Western Union money order. *See* Compl. ¶ V, ¶ 2 & Ex. B, no. 1:04CV562. Plaintiff also alleges that on about March 11, 2003, Defendant Rentz and other agents executed a search warrant at a storage unit in Greensboro and seized items that were beyond the scope of the warrant. Finally, Plaintiff alleges that on about March 14, 2003, Defendant Rentz and other agents conducted an illegal search and seized items at the storage unit without probable cause or a search warrant. Plaintiff alleges that the following property was illegally seized: one Panasonic fax machine; one Motorola pager; three Nokia cell phones; magazines, photos, and photo albums; one Lexmark printer; and one Smith Corona typewriter. Plaintiff seeks $2 million dollars in compensatory and punitive damages against Defendant Rentz.[4]

In addition to the *Bivens* action filed against Defendant Rentz, on June 28,

---

[4] Plaintiff originally filed his claim against Rentz and two private individuals whom he alleged entered his apartment and stole certain items. This court, by a written order dated June 22, 2004, determined that the two private individuals were not subject to suit under *Bivens*.

-4-

2004, Plaintiff also filed in this court a motion for return of property pursuant to FED. R. CRIM. P. 41(g) (formerly Rule 41(e)).[5] In his motion for return of property, Plaintiff has named the "United States, FBI" as Defendant, and he moves for the return of the same property identified in his *Bivens* action or for its equivalent in dollar value. *See* Compl. § VIII, no. 04CV593. Because the court will look beyond the pleadings in Plaintiff's *Bivens* action and his Rule 41(g) motion, the court will treat the motions by Defendant United States and Defendant Rentz as motions for summary judgment.

## DISCUSSION

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the

---

[5] Plaintiff described his motion for return of property as one brought pursuant to FED. R. CRIM. P. 41(e), which was formerly the section addressing motions for return of property. Rule 41(e) was amended, however, on April 29, 2002, and was recodified at 41(g). Thus, motions for return of property are now properly made under Rule 41(g), which provides:

> Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

FED. R. CRIM. P. 41(g).

basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 586-87 (1986) (quoting FED. R. CIV. P. 56(e)).

In making a determination on a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Virginia*, 67 F.3d 53, 56 (4th Cir. 1995). Mere allegations and denials, however, are insufficient to establish a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251 (citations omitted). Thus, the moving party can bear its burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish its claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Plaintiff's Motion for Return of Property under FED. R. CRIM. P. 41(g)

FED. R. CRIM. P. 41(g) provides that, on a motion to return property, "[a] person

-6-

aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." FED. R. CRIM. P. 41(g). The current Rule 41(g) reflects that once the government no longer has a need to use seized property as evidence, the government must return the property unless it is contraband or subject to forfeiture. *See United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990); *United States v. Brant*, 684 F. Supp. 421, 423 (M.D.N.C. 1988). Furthermore, the government must return the property even if it was seized legally.[6] *See In re Grand Jury Subpoena Duces Tecum Issued to Roe & Roe, Inc.*, 49 F. Supp. 2d 451, 453 (D. Md. 1999). In a Rule 41(g) proceeding, the movant bears the initial burden of establishing a prima facie case of lawful entitlement to the property in question. *See United States v. Maez*, 915 F.2d 1466, 1468 (10th Cir. 1990). The movant is aided in this burden, however, by the presumption that the seizure of property from someone is prima facie evidence of that person's subsequent entitlement to that property. *Id.* Once the movant makes out a prima facie case of lawful entitlement, the burden shifts to the government to show that it has a legitimate reason to retain the property or to demonstrate that it does not possess

---

[6] The Advisory Committee notes to the 1989 amendment to the Rule state:

"As amended, Rule 41(e) [now 41(g)] provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it."

FED. R. CRIM. P. 41 advisory committee's note (1989).

-7-

the property. *United States v. Chambers*, 192 F.3d 374, 377 (3rd Cir. 1999). To the extent the government relies on the latter defense, it "must do more than state, without documentary support, that it no longer possesses the property at issue." *Id.* at 377-78.

In response to Plaintiff's Rule 41(g) motion, Defendant United States argues that some of the items that Plaintiff seeks to have returned are not and have never been in the government's possession. Defendant argues, for instance, that FBI agents did not break into Plaintiff's apartment on February 27, 2003, and the government has never been in possession of the following items alleged to have been stolen from Plaintiff: one 53" Sony big screen television; one Compaq 15" laptop computer; one Sava 900 Sony home theater surround sound system; one Sony wooden sound system; one Panasonic television/VCR combo; one bedroom radio and CD player; one antique oriental side table; and one $2,500 Western Union money order. Plaintiff has requested a hearing on this issue, but he has produced nothing more than conclusory assertions that government officials broke into his apartment and stole this property.[7] Defendant Rentz has submitted an affidavit in which he asserts under oath that "[a]t no time did I enter" Plaintiff's apartment, and that he further "ha[s] no knowledge of any other federal, state or local law

---

[7] Plaintiff has submitted an affidavit by Olaide Folorunsho purporting to support Plaintiff's claim that federal agents broke into his apartment, but the statements in Folorunsho's affidavit in support of this claim consist of inadmissible hearsay that cannot be considered on summary judgment. *See* Pl.'s Br. Opp. Def.'s Mot. Summ. J., Ex. D, Folorunsho Aff.

-8-

enforcement official entering" Plaintiff's apartment. *See* Rentz Dec. ¶ 16. Rentz attests that he does not, nor did he ever have, knowledge of the whereabouts of the property allegedly stolen from Plaintiff's apartment. Although under Rule 41(g), a district court may order the government to return property, a district court cannot order the government to return property not in its custody. *See Matthews v. United States*, 917 F. Supp. 1090, 1104 (E.D. Va. 1996) (on a motion for return of property, stating that "since the government does not possess [the defendant's] property, it cannot return his property") (quoting *United States v. White*, 718 F.2d 260, 261 (8th Cir. 1983)). Here, Plaintiff has produced nothing more than bald assertions that the property allegedly stolen from his apartment is in the possession of the government, and the government has produced affidavit testimony showing that it has never been in possession of this property. Thus, Plaintiff should not be entitled to an evidentiary hearing regarding the alleged stolen property, and the Rule 41(g) motion should be denied as to the following property: one 53" Sony big screen television; one Compaq 15" laptop computer; one Sava 900 Sony home theater surround sound system; one Sony wooden sound system; one Panasonic television/VCR combo; one bedroom radio and CD player; one antique oriental side table; and one $2,500 Western Union money order. *Accord United States v. Dean*, 100 F.3d 19, 21 (5th Cir. 1996) (holding that the plaintiff's Rule 41(e) motion did not present a disputed factual issue, and plaintiff was not entitled to an evidentiary hearing where plaintiff alleged no facts to support a Rule 41(e) claim nor sought to rebut the government's circumstantial

-9-

evidence).

In response to the Rule 41(g) motion, Defendant United States admits that it is in possession of the following property, which was seized during the course of executing a search warrant at a storage unit on March 14, 2003: a Nigerian passport in Plaintiff's name; a Nigerian passport in the name of Terry Olatoye; one Panasonic fax machine; one Motorola pager; three Nokia cell phones; one Lexmark printer; one Smith Corona typewriter; miscellaneous magazines that are not in Plaintiff's name; and various photographs. Defendant argues, however, that Plaintiff is not entitled to the return of this property. For the following reasons, the court finds that Plaintiff is entitled to have some of this property returned to him.

As for the two Nigerian passports—one in Plaintiff's name and one in someone else's name (Terry Olatoye)—Plaintiff is not entitled to the return of the passport in the name of a third party because the very fact that the passport is not in Plaintiff's name rebuts any assertion that he is legally entitled to its possession.[8] As for Plaintiff's Nigerian passport, the government first argues that Plaintiff is not entitled to return of this passport because under federal regulation 22 C.F.R. § 51.9, a passport is the property of the United States and is not the property of the person in whose name the passport is issued.[9] Section 51.9, however, appears to apply to

---

[8] Plaintiff concedes that he is not entitled to the passport bearing the name Terry Olatoye.

[9] Section 51.9 provides that "[a] passport shall at all times remain the property of the United States and shall be returned to the Government upon demand."

United States passports; therefore, section 51.9 does not appear to apply to Plaintiff's Nigerian passport. *See Atem v. Ashcroft*, 312 F. Supp. 2d 792, 801 (E.D. Va. 2004). Nonetheless, the passport should not be returned to Plaintiff for other reasons. First, according to Defendant, the U.S. State Department has advised Defendant that both passports should be returned to the Nigerian Embassy because they are property of the Nigerian Embassy. Furthermore, the court observes that according to the court records Plaintiff is a deportable alien, and he is subject to being deported after the completion of his term of incarceration. Thus, it is proper for the government to provide his passport to the Immigration and Naturalization Service ("INS") (now known as the Bureau of Immigration and Customs Enforcement ("BICE") within the Department of Homeland Security) for use during deportation proceedings. *See Onwubiko v. United States*, 969 F.2d 1392, 1397 (2d Cir. 1992). Defendant should determine what entity each of the two passports should be delivered to, but, in any event, the motion to return property should be denied as to the Nigerian passports.

As for the magazines (or any other pieces of mail) addressed to third parties, the government is correct in asserting that Plaintiff is not entitled to items in the names of third parties who were most likely Plaintiff's intended victims of identity theft, and Plaintiff has come forward with nothing to demonstrate an ownership interest in these items. Thus, the court should deny Plaintiff's motion for return of property as to magazines and other pieces of mail addressed to third parties.

-11-

As for the remaining property in the government's custody (one Panasonic fax machine; one Motorola pager; three Nokia cell phones; one Lexmark printer; one Smith Corona typewriter; and various photos), it appears that Plaintiff is entitled to have this property returned to him as there are no pending criminal proceedings against Plaintiff. The government argues that Plaintiff's motion for return of this property is premature because Plaintiff also has pending before this court a motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence in docket number 1:04cv1021.[10] The government has cited no case, however, supporting the proposition that it may retain property simply because a 2255 motion is pending. Indeed, it is difficult to imagine how the government might use the seized fax machine, pager, cell phones, printer, typewriter, and photos as "evidence" against Plaintiff in his pending motion to set aside his sentence. Plaintiff is, therefore, entitled to have this property returned to him. Thus, the court should grant Plaintiff's motion for the return of the following property held in FBI custody: one Panasonic fax machine, one Motorola pager, three Nokia cell phones, one Lexmark printer, one

---

[10] The government states in its brief opposing the motion for return of property: "While plaintiff may ultimately be entitled to the return of property held as evidence in FBI custody . . . his request is premature due to the pendency of the 2255 motion. Once all proceedings are complete, however, plaintiff may recover his property or authorize someone else to recover it for him." See Def.'s Br. Supp. Mot. Dism./Summ. J., p. 11, case no. 04CV593. The court notes that the 2255 motion to which Defendant refers was terminated by the court inadvertently on February 23, 2005, but was reopened on April 8, 2005, and was referred to the undersigned. On May 10, 2005, the undersigned issued a recommendation in that case, recommending that the court deny the motion to vacate.

-12-

Smith Corona typewriter, and various photos. As for Plaintiff's request for money damages, however, it is well settled that money damages may not be recovered on a motion for return of property under Rule 41(g). *See United States v. Jones*, 225 F.3d 468, 469-70 (4th Cir. 2000). Thus, Plaintiff's request for money damages should be denied.[11] In sum, the court should grant Plaintiff's Rule 41(g) motion in part and order that the following property must be returned to Plaintiff: one Panasonic fax machine; one Motorola pager; three Nokia cell phones; one Lexmark printer; one Smith Corona typewriter; and various photos.

## The *Bivens* Claim Against Defendant Rentz

The court next addresses the motion for summary judgment as to Plaintiff's *Bivens* action against Defendant Rentz.[12] The court first notes that Defendant Rentz has moved to dismiss the action against him under FED. R. CIV. P. 12(b)(5) because he was not served within 120 days of the filing of Plaintiff's complaint in accordance

---

[11] To the extent that Plaintiff's complaint can also be read to assert a claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., which waives the federal government's sovereign immunity in certain situations, he can find no relief under the Act because he has not shown that he exhausted his administrative remedies. *See* 28 U.S.C. § 2675(a). In addition, the type of claim raised here is excluded under section 2680(c) of the Act, which excepts from the waiver of sovereign immunity "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs . . . or any other law enforcement officer." 28 U.S.C. § 2680(c).

[12] The parties agree that this claim is against Defendant Rentz in his individual capacity only. In any event, a *Bivens* claim against Defendant Rentz in his official capacity would be barred by the sovereign immunity doctrine. *Brown v. General Servs. Admin.*, 425 U.S. 820, 826-27 (1976).

-13-

with FED. R. CIV. P. 4(m).[13]   The complaint was filed on June 22, 2004, and

Defendant Rentz was not served until more than 120 days later on December 16,

2004. On the day that the complaint was filed, however, the court issued an order

stating, among other things, that Plaintiff's service requirement would be stayed until

Plaintiff submitted to the court certain documents related to his *in forma pauperis*

application. On July 30, 2004, Plaintiff sought relief from the court's order requiring

a partial payment and this motion was denied by a marginal order dated August 13

and entered on the record on August 17. The effect of the court's order on August

17, 2004, was to end the stay for the service requirement. Service of summons was

made on Defendant Rentz on December 16, 2004, which was within 120 days of the

August 17 order. Thus, Plaintiff complied with the 120-day requirement for service

on Defendant Rentz, and Defendant Rentz's Rule 12(b)(5) motion should, therefore,

be denied.

    As for the merits of Plaintiff's *Bivens* claim against Defendant Rentz, under

*Bivens* a person can be held liable for acts under color of federal law which deprive

---

[13]   Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part:

> If service of the summons and complaint is not made upon a defendant
> with n 120 days after the filing of the complaint, the court, upon motion or on
> its own initiative after notice to the plaintiff, shall dismiss the action without
> prejudice as to that defendant or direct that service be effected within a
> specified time; provided that if the plaintiff shows good cause for the failure,
> the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

-14-

another of a constitutional right. 403 U.S. at 397. Federal officers, however, are entitled to qualified immunity from a *Bivens* claim if their conduct does not violate a "clearly established" constitutional right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In support of his *Bivens* claim against Defendant Rentz, Plaintiff alleges that his Fourth Amendment rights were violated in that (1) on February 27, 2003, Defendant Rentz and other agents broke into Plaintiff's apartment without probable cause or a search warrant and stole Plaintiff's personal property, including televisions, stereo equipment, and other items; (2) on about March 11, 2003, Defendant Rentz and other agents executed a search warrant for items in a storage unit owned by Plaintiff's friend and seized items beyond the scope of the warrant; and (3) on about March 14, 2003, Defendant Rentz and other agents conducted an illegal search and seized items from the storage unit without probable cause or a search warrant. For the following reasons, the court finds that Plaintiff has not raised a genuine issue of fact as to whether his Fourth Amendment rights were violated by Defendant Rentz.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

U.S. CONST. amend. IV. First, as to Plaintiff's allegations that Defendant Rentz and other agents broke into Plaintiff's apartment and stole property of Plaintiff's on

-15-

February 27, 2003, an unauthorized entry into Plaintiff's apartment without a search warrant and theft of his property would constitute a clear violation of his Fourth Amendment rights. Plaintiff has produced nothing more than bald assertions, however, in support of his allegation that federal agents broke into his apartment and stole his property.[14] Furthermore, as noted previously, Defendant Rentz has submitted a sworn affidavit attesting that he has never been inside Plaintiff's apartment and that he has no knowledge of the items that were allegedly stolen from Plaintiff's apartment. Thus, the court finds that summary judgment should be granted to Defendant as to Plaintiff's *Bivens* action based on his allegation that Defendant Rentz and other federal agents broke into his apartment and stole his property on February 27, 2003.

As for the alleged illegal searches conducted by Defendant Rentz on March 11 and March 14, 2003, the rights that Plaintiff alleges were violated–the right to be free from a search conducted pursuant to a warrant unsupported by probable cause and the right to be free from a search for items not adequately described in the warrant–are clearly established. *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978) (reciting that the Fourth Amendment demands a factual showing sufficient to comprise probable cause and demands that it be a truthful showing); *Berger v. New*

---

[14] Plaintiff has submitted an affidavit by Olaide Folorunsho purporting to support Plaintiff's allegations that federal agents broke into his apartment, but, as noted previously, *see supra* n.7, the allegations in the affidavit consist of inadmissible hearsay that cannot be considered on summary judgment.

-16-

*York*, 388 U.S. 41, 55 (1967) (reciting the Fourth Amendment's requirement that a warrant particularly describe the things to be seized). Nevertheless, Plaintiff has not shown that there is a genuine issue of material fact as to whether his Fourth Amendment rights were violated during the searches and seizures conducted on March 11 and March 14, 2003.

In the context of search warrants, this circuit's court of appeals has stated: "The case law of the Fourth Circuit clearly evidences this Court's general willingness to affirm, under a highly deferential standard of review, a magistrate's finding of probable cause." *Simmons v. Poe*, 47 F.3d 1370, 1378 (4th Cir. 1995); *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994) (stating that a magistrate's determination of probable cause "should be paid great deference by reviewing courts" and is supported when there is a "fair probability" that the thing for which the police are searching will be found in the place to be searched). As for Plaintiff's claim that the items seized pursuant to the March 11 search were beyond the scope of the warrant, Defendant has presented evidence to show that Plaintiff was arrested in February 2003 for submitting false passport applications. During the government's investigation, a confidential informant told Defendant Rentz that Plaintiff's belongings had been moved to a storage facility in Greensboro rented in the name of Muhammed's friend Ayinde. Defendant Rentz also learned from a second confidential source that Plaintiff owned several pieces of luggage with rollers and locks. The confidential source had seen the contents of the luggage, which included

-17-

evidence of identity theft, including false identifications, bank statements, credit cards, and stolen mail. On March 7, 2003, Rentz contacted Ayinde, who informed Rentz that he had moved all of Plaintiff's belongings from Plaintiff's apartment to a storage facility. Ayinde produced paper work showing that Ayinde had rented unit E22 at the Shurgard Storage Center, 1110 E. Cone Boulevard. Ayinde testified that Plaintiff's sister had asked Ayinde to remove Plaintiff's belongings from Plaintiff's apartment about a week after Plaintiff was arrested. Ayinde agreed to take Rentz to the storage unit, where Ayinde used his key to open unit E22. Ayinde gave Rentz permission to enter the storage facility. Upon entering the storage unit, Rentz noted four bags, including one large, black Samsonite brand suitcase on rollers; and one medium-sized, dark-colored Unicorn brand suitcase with rollers; one black Samsonite brand suit bag with rollers; and one black Genvico brand suitcase with rollers. Ayinde gave consent for agents to remove the four pieces of luggage with rollers and locks and hold them at the FBI office in Greensboro for the purpose of obtaining a search warrant for the contents of the four pieces of luggage. Rentz removed the suitcases and prepared an affidavit in support of a search warrant for records including evidence of identity theft believed to be contained in the suitcases. Ayinde was issued a property receipt for the luggage. On March 10, 2003, Rentz contacted another source, who recognized three of the four pieces of luggage as belonging to Plaintiff.

On March 11, 2003, Agent Rentz obtained a search warrant for the four pieces

-18-

of luggage. The search warrant was executed on March 11, 2003, to seize evidence of fraud and identity theft. Numerous items of fraud and identity theft were discovered in a medium-sized, black cordura upright Genvico bag with rollers and a luggage lock, including check books, drivers licenses, social security cards, credit cards, bank statements, stolen mail, and handwritten notebooks with hundreds of names, account numbers, social security numbers, and dates of birth. The luggage that was searched on March 11, 2003, was returned to the storage facility, with the exception of the medium-sized black cordura upright Genvico bag with rollers and a luggage lock, which was seized as evidence.

In support of his claim that his Fourth Amendment rights were violated by the search of the luggage on March 11, 2003, Plaintiff has offered nothing more than conclusory allegations. For instance, he alleges generally that some of the items seized by agents went beyond the scope of the warrant, but he does not identify which items he contends went beyond the scope of the warrant. Here, Defendant has come forward with evidence that the items seized were within the scope of the warrant and furthermore that the warrant was issued upon a finding of probable cause by the magistrate judge. Thus, the court finds that Plaintiff has not produced a genuine issue of fact as to his Fourth Amendment claim based on an alleged unlawful search on March 11, 2003.

Nor has Plaintiff produced a genuine issue of material fact as to his Fourth Amendment claim based on the alleged unlawful search that took place on March

-19-

14, 2003. On March 13, 2003, Defendant Rentz obtained a second search warrant for the storage unit owned by Plaintiff's friend Ayinde. On March 14, 2003, the second warrant was executed, and more evidence of identify theft was discovered in the storage unit, including papers with personal information and mail, neither of which belonged to Plaintiff. Again, Defendant Rentz searched Plaintiff's property with a valid search warrant, which entitled him to lawfully search the unit to gather evidence in furtherance of the criminal investigation of Plaintiff for identity theft. Although Plaintiff alleges that his constitutional rights were violated, the undisputed facts show that the searches and seizures of Plaintiff's property were conducted through valid, judicially issued warrants or with the consent of the person in whose name the storage facility was rented. Thus, the court should grant summary judgment to Defendant Rentz on Plaintiff's *Bivens* claim based on the alleged unlawful searches conducted on March 11 and March 14, 2003.

## CONCLUSION

For all these reasons, **IT IS RECOMMENDED** that the court grant summary judgment to Defendant Rentz on Plaintiff's *Bivens* claim, and that Plaintiff's *Bivens* action should be **DISMISSED**. Furthermore, **IT IS RECOMMENDED** that Plaintiff's motion for return of property should be **GRANTED IN PART**, in that Defendant United States should be required to return to Plaintiff the following property in the government's possession: one Panasonic fax machine; one Motorola pager; three Nokia cell phones; one Lexmark printer; one Smith Corona typewriter, and various

-20-

photos. In all other respects, **IT IS RECOMMENDED** that Plaintiff's motion for return

of property should be **DENIED**. **IT IS FURTHER ORDERED** that, pursuant to FED.

R. CIV. P. 42(a), case numbers 1:04CV593 and 1:04CV562 are hereby consolidated.

Finally, the court should direct Defendant United States to deliver the two Nigerian

passports to the appropriate entity or entities.


_WALLACE W. DIXON_
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
May 20, 2005

-21-